Filed 10/28/15  In re Harmony D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re HARMONY D., et al., Persons Coming Under the Juvenile Court Law. | B261170 |
| | (Los Angeles County Super. Ct. No. CK63065) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| D.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Margaret S. Henry, Judge.  Affirmed and remanded with instructions.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

Appellant D.D. (father) appeals from the juvenile court's December 4, 2014 order establishing dependency jurisdiction over his children, C.D. (born Jan. 2013), and Harmony (born Oct. 2011), and removing them from his custody.[1] Father contends the order must be reversed for failure to comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) and because insufficient evidence supports the juvenile court's findings under Welfare and Institutions Code section 300, subdivision (b),[2] that the children were at risk of harm because of domestic violence and an unsanitary and hazardous home environment.

The Los Angeles Department of Children and Family Services (the Department) concedes that the matter should be remanded to the juvenile court for compliance with the ICWA inquiry and notice requirements.

We conclude that substantial evidence supports the juvenile court's jurisdictional and dispositional findings and order, and affirm the order with directions to ensure compliance with the applicable inquiry and notice requirements.

## BACKGROUND

**Detention and section 300 petition**

On November 3, 2014, Gardena police officers arrested father after they responded to a domestic violence incident at the family home. Upon arriving at the home, officers saw father arguing with his former girlfriend, Sharone W. who had abrasions under her right eye and her right collar bone, bruising on the underside of her left forearm, bleeding in or round both earlobes, and blood around her lips and inside her mouth. She refused medical attention and said her injuries were "probably" caused when she fell after father pushed her. Both Sharone and father denied hitting each other. Sharone's injuries led the arresting officer to conclude that father was the aggressor and

---

[1]    The children's mother is not a party to this appeal.

[2]    All further statutory references are to the Welfare and Institutions Code.

took father into custody. While in custody, father showed officers a wound on his chest that he claimed to have sustained when Sharone bit him.

Responding Officer Maderois informed the Department's social worker of father's arrest. It was reported that at the time father was arrested, he had outstanding warrants for offenses ranging from illegal drug possession to domestic violence. Officer Maderois further reported that father admitted having had a heated argument with Sharone that led to a physical altercation. Officer Maderois stated that the children were horrified by the violence they had witnessed and were crying and screaming for help. Officer Maderois reported that the family home was filthy, with cigarette butts and broken glass on the carpet, exposed electrical wiring, no working toilet, and an unpleasant odor. The home was also infested with roaches. C.D. was walking around barefoot near the glass. Officer Maderois took the children, who were in the home at the time of father's arrest, into protective custody.

The children were taken to the hospital for a forensic examination. The nurse performing the examination found the children were filthy, had soiled their pants and diaper, and reacted with fear to adult interaction. The children's poor hygiene led the nurse to conclude they had been neglected.

In an interview with the Department's social worker, father described Sharone as his ex-girlfriend with whom he had broken up "a while ago." He accused Sharone of being the aggressor during their altercation and said that she repeatedly struck him and threw objects at him. He admitted that both children were present and crying during the altercation and were struck by pieces of a plastic bottle. Father denied hitting Sharone or causing her injuries. He also denied that the home was filthy or unsafe and blamed Sharone, the police, the apartment manager, and staff from Section 8 Housing[3] for "trashing" his apartment. Father stated that he, the children, and the children's mother

---

[3]    Section 8 of the United States Housing Act of 1937, commonly known as the "Section 8 Housing Program," subsidizes rent for the elderly and persons with low income.

had no Indian heritage but that the children's paternal grandfather did. He did not provide the paternal grandfather's name or any further information.

The Department filed a petition on November 7, 2014 alleging, under section 300, subdivisions (a) and (b), that father's domestic violence and the filthy and unsafe condition of the family home placed the children at risk of harm. The accompanying detention report stated that ICWA did not apply.

At the November 7, 2014 detention hearing, father filed a form ICWA-020 stating that his great-grandfather, Elize B., was a member of the Paiute Indian Tribe. The juvenile court ordered Harmony and C.D. detained from father's custody and granted father monitored visits. The court ordered the Department to provide father with referrals for domestic violence and anger management counseling, parenting classes, and random drug testing. The court further ordered the Department to investigate father's claim of Indian heritage by interviewing the paternal grandparents and any other known relatives, to provide notice to the Bureau of Indian Affairs and the Secretary of the Interior, and to attach the notices to a report to be filed on January 8, 2014.

**Jurisdiction and disposition**

The children were placed together in a foster home on November 24, 2014. Harmony's caregiver reported that the child needed to urinate frequently and that she emitted an unpleasant odor. C.D. was seen by a doctor on November 25, 2014, for an ear infection and an upper respiratory infection and was prescribed medication for those conditions.

Father was not interviewed for the Department's December 2, 2014 jurisdiction/disposition report because he failed to appear for a meeting with the social worker, and a subsequent meeting had to be postponed. The Department noted in its report that there had been a prior referral regarding father in July 2013 alleging domestic violence between father and the paternal grandmother. The referral indicated that the paternal grandmother had contacted law enforcement for assistance and that father was subsequently arrested on an outstanding warrant.

4

In a last minute report filed on December 4, 2014, the Department reported on a December 2, 2014 interview with father, who denied any Indian heritage and said he had no information regarding paternal relatives or tribal contacts. Father also denied the domestic violence allegations and any prior domestic violence with Sharone. He said that during the November 3, 2014 altercation, Sharone bit him, hit, him, and threw objects at him. He claimed the children were asleep in the home during the incident. Father also denied that the home was unsafe and filthy. He said the toilet was in working condition but may not have been flushed at the time officers responded to the home. He denied that there was exposed electrical wiring accessible to the children and explained that he had recently discarded a television and a cable cord was lying on the floor along the wall. Father said that there was no trash in the home, and that the glass and cigarette butts on the floor were the result of a thrown ashtray during the altercation with Sharone. The odor in the home emanated from spoiled food in a defrosting refrigerator during a recent power failure. Father noted that the home had undergone a Section 8 housing inspection a month and half ago, and there had been no concerns.

As to the children's hygiene, father denied that they were unkempt and dirty and said they may have been a little sticky from ice cream and chips they had eaten earlier in the day.

**Adjudication hearing**

At the December 4, 2014 adjudication hearing, father called Officer Maderois as a witness. Officer Maderois testified that he responded to father's home on November 3, 2014, after a neighbor reported hearing a woman screaming. As Officer Maderois approached the home, he could hear father yelling at someone to get out of his apartment. Father was facing a woman, who was six inches away from him with her back to the wall. Officer Maderois did not see father push or hit the woman. When Officer Maderois entered the home, he saw broken glass and cigarette butts on the floor. A one-year-old child was present, wearing only a diaper and no shoes. The other child was sleeping in a bedroom.

Officer Maderois observed that the woman was injured. She had blood on both earlobes, inside her ears, and on the side of her cheek. She also had a fresh one-fourth inch laceration under her right eye and on her upper cheek bone, a four-inch scratch across her upper right chest and collar bone, and bruising under her right arm. She had blood around her lips but refused to allow the officer to inspect the inside of her mouth and refused medical attention. Officer Maderois did not see any exposed wires inside the home. He noticed a strong stench in the bathroom, feces in the toilet, and cockroaches throughout the house.

Father testified that on November 3, 2014, his ex-girlfriend Sharone came by his apartment and asked to use his bathroom. Inside the apartment, an argument ensued and Sharone hit him with an ashtray containing cigarettes, and the ashtray shattered. Sharone then proceeded to hit father and to throw things at him. She bit father on the chest, and he pushed her, causing her to fall to the ground. When the police arrived, they handcuffed father and arrested him.

Regarding the condition of the home, father testified that cigarette butts on the floor were the result of the thrown ashtray, there were no exposed wires, and that the toilet was functional. He said the entire building had roaches, and his home had recently passed a Section 8 housing inspection. He had given notice of his intent to vacate the unit and was preparing for a move to Mississippi.

At the conclusion of the hearing, the juvenile court found father's testimony that he had not caused Sharone's injuries not to be credible. The court struck the domestic violence allegations under section 300, subdivision (a), and the allegations under subdivision (b) that father and Sharone had physically assaulted one another on prior occasions, that the toilet in the home was broken, and that electrical wiring was exposed within access of the children. The court then sustained the petition as amended,**4** declared

---

**4**     The sustained allegations state: "b-1 [¶] The children Harmony [D.] and [C.D.]'s father, [D.D.] and the father's female companion, Sharon [W.], have a history of engaging in violent altercations against each other in the children's presence. On 11/3/14, the father struck the female companion's face and body in the children's

the children to be dependents of the juvenile court, and ordered them removed from father's custody. Father was accorded reunification services, unmonitored visits at the children's placement and monitored visits outside that placement. The juvenile court ordered father to participate in parenting classes, a domestic violence program, individual counseling with a licensed therapist to address case issues, and to submit to 10 random or on demand drug tests. The court ordered the Department to investigate placing the children with paternal relatives in Mississippi, and set a six-month review hearing.

Father filed the instant appeal.

**Subsequent proceedings**

At an April 30, 2015 hearing, the juvenile court ordered the Department to further investigate father's Native American heritage. On June 4, 2015, the juvenile court found that notice of the proceedings had not been provided to the previously named Indian tribes as required by law.

---

presence, inflicting bleeding lacerations to her lips, cheek, both ear lobes and right collar bone and bruising to her left harm. The father pushed the female companion causing her to fall and sustain injuries. The female companion bit and struck the father's body, inflicting a bleeding laceration to the father's chest. The female companion scratched the father's face causing the father pain. The female companion threw objects at the father. On 11/3/14, the father was arrested for Inflicting Corporal Injury to Spouse/Cohabitant. The violent conduct between the father and the female companion endangers the children's physical health and safety and places the children at risk of physical harm, damage, and danger."

"b-2 [¶] On 11/3/14, the children Harmony [D.] and [C.D.]'s father, [D.D.], established a filthy, unsanitary and hazardous home environment for the children in that trash was on the floor, the home was infested with cock roaches and the home was permeated with an odor. There were broken glasses on the floor. The furniture was broken. Such a filthy and unsanitary and hazardous home environment established for the children by the father endangers the children's physical health and safety and places the children at risk of physical harm, damage, and danger."

7

**DISCUSSION**

## I. Standard of review

We review the juvenile's court's jurisdictional findings and its selection of a dispositional order for a minor under the substantial evidence standard. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; *In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) Under this standard, we review the record to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, and we resolve all conflicts in the evidence and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

## II. Jurisdiction

Father contends there was insufficient evidence to support the findings under section 300, subdivision (b), that the children were at risk of harm at the time of the December 4, 2014 adjudication hearing as the result of domestic violence or an unsanitary, hazardous home environment. He argues that the November 3, 2014 incident was the only time father engaged in an altercation, that he had terminated his relationship with Sharone, and that there was no evidence he was in a relationship with anyone else. Father further argues that he had moved out of the unit that had been deemed to be unsanitary and hazardous, had secured temporary housing, and was in the process of moving to live with relatives in Mississippi.

Section 300, subdivision (b) accords the juvenile court jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." The relevant inquiry under section 300, subdivision (b) is whether the circumstances at the time of the jurisdictional hearing subject the minor to the defined risk of harm. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) When making this determination, the juvenile court may consider past events (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6), as a parent's past conduct

is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.)

"Exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b). [Citations.]" (*In re. T.V.* (2013) 217 Cal.App.4th 126, 134.) "'"[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." [Citation.] Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot, or leg . . . ." [Citation.]' [Citation.]" (*In re R.C.* (2012) 210 Cal.App.4th 930, 941, quoting *In re Heather A., supra*, 52 Cal.App.4th at p. 194.)

Substantial evidence supports the juvenile court's jurisdictional findings that the children were at substantial risk of harm because of father's domestic violence. Father was arrested for domestic violence after he admitted engaging in a physical altercation with Sharone in which they both sustained injuries. Father admitted that the children were present and crying during the altercation, and that they were struck by objects thrown during the altercation.

Father argues that the children were not at continuing risk of harm at the time of the adjudication hearing because he had terminated his relationship with Sharone. But father claimed to have terminated his relationship with Sharone before the November 3, 2014 incident, yet he allowed her into his home and violence ensued. Father also claims the November 3, 2014 incident was the only time he engaged in an altercation. There is evidence in the record, however, of a July 2013 violent incident between father and the paternal grandmother that required law enforcement intervention. Substantial evidence supports the juvenile court's jurisdictional findings based on father's domestic violence.

Substantial evidence also supports the juvenile court's findings that the children were at continuing risk of harm because of father's neglect and maintenance of an unsanitary and hazardous home environment. Responding law enforcement officers

9

reported that the family home was filthy and hazardous. Trash and broken glass littered the floor, cockroaches were everywhere, and a strong stench was in the bathroom, where the toilet appeared to be nonfunctional. There was broken furniture, and the children appeared to have been sleeping on a broken mattress. There was evidence that the children suffered harm as the result of the neglect. A nurse who completed a forensic medical examination of the children found that the children were filthy and wearing soiled garments and a soiled diaper, and that they were fearful of adult interaction. The children's poor hygiene led the nurse to conclude they had been neglected. C.D. was later diagnosed with ear and upper respiratory infections that required treatment and medication. The fact that neither child had yet suffered serious physical harm did not preclude the juvenile court from assuming jurisdiction over them. "'[A] court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773, quoting *In re R.V.* (2012) 208 Cal.App.4th 837, 843.) Father's repeated denial of any problem with the family home serves only to underscore the need for juvenile court intervention.

Substantial evidence supports the jurisdictional findings.

## III.  Dispositional order

Father contends substantial evidence does not support the order removing the children from his custody. Father's violent conduct in the presence of the children, the unsanitary and hazardous condition of the home, and father's failure to recognize the danger to the children presented by his own conduct and the hazards present in his home, support the juvenile court's removal order.

Father further contends substantial evidence does not support the juvenile court's determination that there were no reasonable means to protect the children without removing them from father's custody. He claims there were alternative out-of-home placements for the children with him or with other paternal relatives that should have been considered.

The record shows that the juvenile court considered and discussed with counsel the possibility of placing the children with father. The court rejected that option because father had not maintained regular contact with the social worker and had not enrolled in any programs. The record also shows that the Department considered a paternal aunt father had suggested as a possible initial placement option. Although the aunt had expressed interest in caring for the children, the Department was unable to place them with her because of her criminal history.

Substantial evidence supports the juvenile court's dispositional order removing the children from father's custody.

## IV. ICWA

ICWA accords Indian tribes the right to intervene at any point in a state court dependency proceeding involving an Indian child. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 173-174.) To ensure the tribe will be afforded the opportunity to intervene and assert its rights in the action, the statute requires that notice be given to the appropriate tribe in any dependency proceeding involving an Indian child.[5]

In California, section 224.2 governs ICWA notice in dependency proceedings. Subdivision (a) of that statute provides in relevant part: "If the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved, any notice sent in an Indian child custody proceeding under this code shall . . . comply with all of

---

[5] The ICWA notice provision states: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (25 U.S.C. § 1912(a).)

the following requirements:  [¶] (1) Notice shall be sent by registered or certified mail with return receipt requested.  Additional notice by first-class mail is recommended, but not required.  [¶] (2) Notice to the tribe shall be to the tribal chairperson, unless the tribe has designated another agent for service.  [¶] (3) Notice shall be sent to all tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe in accordance with subdivision (d) of Section 224.1, after which notice need only be sent to the tribe determined to be the Indian child's tribe."  (§ 224.2, subd. (a)(1)-(3).)

California law also imposes an "affirmative and continuing duty" on the court and the Department "to inquire whether a child for whom a petition . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings."  (§ 224.3, subd. (a).) Subdivision (c) of section 224.3 sets forth the steps to be taken when making further inquiry regarding a child's Indian status:

> "If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2, contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."[6]

---

[6]     The statutory inquiry requirements are implemented by rule 5.481(a) of the California Rules of Court.  Subdivision (a)(4)(A) of rule 5.481 provides that inquiry regarding a child's Indian heritage shall include "[i]nterviewing the parents, Indian custodian, and 'extended family members' as defined in 25 United States Code section 1901 and 1903(2), to gather the information listed in Welfare and Institutions Code section 224.2(a)(5) . . . which is required to complete the *Notice of Child Custody Proceeding for Indian Child* (form ICWA-030)."

Father contends, and the Department concedes, that the inquiry and notice requirements of ICWA were not met in this case and that the trial court erred by holding the adjudication hearing without ensuring compliance with those requirements. Failure to comply with the inquiry and notice requirements of ICWA did not divest the juvenile court of jurisdiction over the subject matter of this case, however, and it does not prohibit this court from issuing a limited remand to permit compliance, with directions to the trial court that depend on the outcome of the ICWA notice. (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 384-385.)

## DISPOSITION

The order of December 4, 2014, is affirmed and the matter is remanded to the juvenile court for the limited purpose of directing the juvenile court to order the Department to comply with the inquiry and notice requirements of ICWA and applicable California law. If, after proper inquiry and notice, a tribe claims that Harmony and C.D. are Indian children, or if other information is presented to the juvenile court that suggests the minors are Indian children, the juvenile court is ordered to conduct a new hearing in conformity with the provisions of ICWA and California law relating to child custody proceedings involving Indian children, and the children, the tribe, and father may petition the juvenile court to invalidate any orders that violate ICWA.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

13